## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

        v.

MATCH GROUP AMERICAS, LLC,
a limited liability company; and

HUMOR RAINBOW, INC.,
a corporation d/b/a OkCupid,

    Defendants.

Case No. 3:26-cv-996

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

1.    The FTC brings this action for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). For these violations, the FTC seeks relief, including a permanent injunction and other relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

### SUMMARY OF THE CASE

2.    Defendant Humor Rainbow, Inc. ("Humor Rainbow") owns and operates the online and mobile dating application OkCupid.

3.    OkCupid is one of dozens of dating platforms owned by Humor Rainbow's ultimate parent company, Match Group, Inc. ("MGI"). Other popular brands in MGI's portfolio include Match.com®, Tinder®, and Hinge®.

4.     For several years, including in OkCupid's 2014 privacy policy, Humor Rainbow specified that it does not share personal information with anyone other than service providers, business partners, or other businesses within its family of businesses; in response to legal obligations (e.g., in response to a subpoena, court order, or investigation); or when it informs users and gives them an opportunity to opt out of having their personal information shared.

5.     In September 2014, however, Humor Rainbow gave an unrelated third-party company (the "Data Recipient") access to the personal data of millions of OkCupid users, including user photos, demographic information, and location information.

6.     Humor Rainbow disclosed users' personal data to the Data Recipient—even though it had no business relationship with the Data Recipient—because Humor Rainbow's founders were personally invested in the Data Recipient.

7.     The Data Recipient was not a third party with whom Humor Rainbow was permitted to share user data under OkCupid's 2014 privacy policy.

8.     Nor did Humor Rainbow give users an opportunity to opt out of Humor Rainbow's sharing of their photos and other personal information, as required by OkCupid's 2014 privacy policy.

9.     Humor Rainbow never informed users that it shared their personal information with the Data Recipient contrary to the representations in OkCupid's privacy policies. Indeed, since 2014, MGI, Match Group, LLC (renamed Tinder LLC), Defendant Match Group Americas, LLC (collectively, "Match"), and Humor Rainbow have engaged in extensive efforts to conceal and deny the fact that Humor Rainbow gave the Data Recipient access to user photos and other data.

10.    Match and Humor Rainbow's actions constitute deceptive practices under Section 5 of the FTC Act.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1311, 1337(a), and 1345.

12.    Venue is proper in this District under 28 U.S.C. §§ 13911(b)(1), (b)(2), (b)(3), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

13.    The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

## DEFENDANTS

14.    Defendant Match Group Americas, LLC ("MGA") is a Delaware limited liability company with its principal place of business at 8750 N. Central Expressway, Suite 1400, Dallas, Texas. MGA transacts or has transacted business in this District and throughout the United States.

15.    Defendant Humor Rainbow is a New York corporation with its principal place of business at 8750 N. Central Expressway, Suite 1400, Dallas, Texas. Humor Rainbow transacts or has transacted business in this District and throughout the United States.

**COMMON ENTERPRISE**

16.     Match and Humor Rainbow have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged in this Complaint.

17.     MGA, Match Group, LLC (renamed Tinder LLC), and Humor Rainbow are wholly-owned subsidiaries of MGI.

18.      In May 2024, Match Group, LLC changed its name to Tinder LLC.

19.     Match and Humor Rainbow have conducted the business practices described in this Complaint through an interrelated network of companies that have common ownership, officers, employees, office locations, and business functions.

20.     MGI, Match Group, LLC (renamed Tinder LLC), MGA, and Humor Rainbow have the same office location at 8750 N. Central Expressway, Suite 1400, Dallas, Texas.

21.      Prior to changing its name to Tinder LLC, Match Group, LLC provided shared services, including legal support, to Match Group, Inc. and its subsidiaries. Serving as Humor Rainbow's agent, Match Group, LLC provided various services to Humor Rainbow, including legal support, communications, finance, investor relations, and information technology. Humor Rainbow does not employ its own legal personnel.

22.     MGA inherited the shared services components including personnel from Match Group, LLC and has been providing services to Humor Rainbow since, at least, May 2024.

23.     Officers, directors, executives, and in-house counsel of MGA and the former Match Group, LLC have also simultaneously held officer, director, and executive positions at Humor Rainbow.

**COMMERCE**

24.     At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANTS' BUSINESSES**

25.     Match is credited with creating the online dating services category thirty years ago. It has expanded its online and mobile dating offerings through various acquisitions and currently owns and operates approximately forty-five different dating platforms.

26.     Humor Rainbow d/b/a OkCupid was founded in 2001 by four friends who created the dating application together in college.

27.     Humor Rainbow operated as a stand-alone company until it was acquired by Match in 2011. After the acquisition, one OkCupid founder remained as Humor Rainbow's President, and another OkCupid founder left Humor Rainbow to become CEO of Match Group, LLC.

28.     Dating platforms facilitate connections between users—generally, the objective of users is to find partners for casual dating or long-term commitments.

29.     Users create profiles that typically include photos of themselves, their physical attributes, and other information relating to their identity, personality, and interests.

30.     Match and OkCupid actively market themselves on privacy, transparency, and a commitment to user data protection.

31.     For example, on the homepage of MGA's namesake website, match.com, MGA claims: "**Your privacy is crucial**. At Match, we believe every user should feel confident that their privacy is being protected online. It is at the core of the way we design and build the services that our users know and love, so that they can fully trust the experience and focus on building meaningful connections."

### HUMOR RAINBOW SHARES DATA WITH UNRELATED THIRD PARTY

32.     In September 2014, the CEO of Clarifai, Inc. e-mailed one of OkCupid's founders requesting that Humor Rainbow give Clarifai, Inc. (i.e., the Data Recipient) access to large datasets of OkCupid photos.

33.     Despite not having any business relationship with Humor Rainbow, the Data Recipient sought Humor Rainbow's assistance because each of OkCupid's founders, including Humor Rainbow's President and Match Group, LLC's CEO, were financially invested in the Data Recipient.

34.     In response to this request, Humor Rainbow gave the Data Recipient access to nearly three million OkCupid user photos. Humor Rainbow's President and Chief Technology Officer were directly involved in facilitating the data transfer.

35.     In addition to user photos, Humor Rainbow shared other personal data with the Data Recipient, including each user's demographic and location information.

36.     Humor Rainbow never executed a formal agreement or set forth restrictions governing the Data Recipient's access to, or use of, the OkCupid user data.

37.     The Data Recipient did not pay for the data and never provided any services to Humor Rainbow or on behalf of OkCupid.

## VIOLATION OF OKCUPID'S POLICIES

38.     Humor Rainbow violated its OkCupid privacy policy when it gave the Data Recipient access to users' personal information.

39.     OkCupid's privacy policies, including the policy in effect in 2014, "describe[] the information collected by OkCupid.com, operated by Humor Rainbow, Inc., (we, us or OkCupid), how that information may be used, with whom it may be shared, and [users'] choices about such uses and disclosures."

40.     Humor Rainbow set forth that it "do[es] not share your personal information with others except as indicated in this Privacy Policy or when we inform you and give you an opportunity to opt out of having your personal information shared."

41.     OkCupid's privacy policy stated that it may share personal information with service providers, business partners, other businesses within its family of businesses (e.g., Match), and in response to legal obligations (e.g., in response to a subpoena, court order, or investigation).

42.     Under OkCupid's privacy policy, the Data Recipient did not qualify under any category of third parties with whom Humor Rainbow represented it shares personal information.

43.     Humor Rainbow did not give users an opportunity to opt out of having their personal information shared, as it stated it would in its privacy policy. Indeed, Match and Humor Rainbow never informed users that Humor Rainbow shared their personal information.

44.     Since September 2014, Match and Humor Rainbow have engaged in extensive efforts to conceal and deny that Humor Rainbow shared users' personal information with the Data Recipient.

45.     For example, after Match and Humor Rainbow learned that the New York Times would be publishing a story about the Data Recipient's use of OkCupid personal information because some of the dating site's founders had invested in the Data Recipient, executives throughout Match and Humor Rainbow prepared a statement to the New York Times that obscured OkCupid's relationship with the Data Recipient and what had transpired. The statement that Humor Rainbow issued disavowed any assistance provided by Humor Rainbow to the Data Recipient.

46.     When OkCupid users inquired about OkCupid and the Data Recipient, Humor Rainbow reiterated its lack of involvement with the Data Recipient. Humor Rainbow stated that "any implication that OkCupid released users' information to [the Data Recipient] is false."

## VIOLATIONS OF THE FTC ACT

47.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

48.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## Count I

### False and Misleading Claims Involving Humor Rainbow's Provision of User Data

49.     As described in Paragraphs 4, 39-41, and 43, Humor Rainbow represented, directly or indirectly, expressly or by implication, that it would only share OkCupid users' personal information with service providers, business partners, other businesses within its family of businesses, and in response to legal obligations.

50.     As described in Paragraphs 4, 40, and 43, Humor Rainbow represented, directly or indirectly, expressly or by implication, that it would not share users' personal information except as indicated in its privacy policy or unless Humor Rainbow informed users and gave them an opportunity to opt out.

51.     In fact, as described in Paragraphs 6-9 and 32-46, Humor Rainbow gave an unrelated third party access to personal information of OkCupid users in violation of its privacy policy. The third party was not a party with whom Humor Rainbow was permitted to share users' personal information and Humor Rainbow never gave users an opportunity to opt out of having their personal information shared. In fact, for years, Match and Humor Rainbow concealed and denied the fact that Humor Rainbow had assisted the Data Recipient in obtaining users' personal information.

52.     Therefore, Defendants' conduct, as described in Paragraphs 49-51 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

53.     Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, the FTC requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act by Defendants; and

B.     Award any additional relief as the Court determines to be just and proper.

Dated: <u>March 30, 2026</u>                    Respectfully submitted,

                                                    */s/ Anne LeJeune*

Sarah Choi
N.Y. Registration No. 4554820
Alejandro Rosenberg
N.Y. Registration No. 4545810
Federal Trade Commission
600 Pennsylvania Ave., N.W., CC-6316
Washington, D.C. 20580
Telephone: (202) 326-2212 (Choi)
schoi1@ftc.gov
arosenberg@ftc.gov

Anne LeJeune
Texas Bar No. 24054286
(Local Counsel)
Federal Trade Commission
1999 Bryan Street, Suite 2150 Dallas,
Texas 75201
Telephone: (214) 979-9371
alejeune@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

FEDERAL TRADE COMMISSION'S COMPLAINT